UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| MURRAY B., | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | 2:18-cv-00030-NT |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Murray B's application for disability insurance benefits under Title II, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision.

### The Administrative Findings and Proceedings

The Commissioner's final decision is the February 9, 2017, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 10-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), the Acting Commissioner's final decision is the ALJ's decision.

claims, 20 C.F.R. §§ 404.1520, 416.920. At step 5, the ALJ found that a person of Plaintiff's age, having Plaintiff's residual functional capacity and vocational background,[2] would be able to perform substantial gainful activity, including representative jobs such as parts cleaner (Dictionary of Occupational Titles # 709.687-010), and that approximately 130,000 parts cleaner jobs exist in the national economy. (R. 28.)

Plaintiff's appeal concerns the reliability of the vocational expert (VE) testimony and the failure of the ALJ to consider evidence Plaintiff submitted after the hearing to challenge the VE testimony. At Plaintiff's hearing, the VE testified that a person with Plaintiff's residual functional capacity and vocational background would be able to perform light exertion jobs. (Hr'g Tr., R. 44 – 45.) The VE identified the parts cleaner job as one Plaintiff could perform, and testified there are approximately 130,000 such jobs in the national economy. (R. 45.)

The ALJ inquired of Plaintiff's non-attorney representative whether he had any issues regarding the VE testimony, and the representative stated he did not. (*Id.*) Subsequently, the representative had the opportunity to question the VE. After obtaining additional testimony about the nature of the parts cleaner job, and the types of businesses that employ parts cleaners, the representative asked how the vocational expert obtained the

---

[2] On the date of his hearing, Plaintiff was 54 years of age. (R. 28, ¶ 7.) Plaintiff lacks transferable skills from prior work and has a high school diploma. (R. 28, ¶ 8.) The ALJ determined that Plaintiff has the residual functional capacity to perform light work lifting and carrying 10 pounds frequently and 20 pounds occasionally, sit for six hours and stand/walk for six hours, frequently reach overhead, occasionally kneel, crouch, crawl, stoop, and climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; and should avoid vibration, hazards, and uneven surfaces. (R. 23 – 24, ¶ 5.) Plaintiff would qualify as disabled under the Medical-Vocational Guidelines (the Grid), but only at age 55. (Hr'g Tr. at 5, R. 41.) Plaintiff's date last insured was December 31, 2015. (R. 22, ¶ 2.)

2

job numbers. (R. 56.) The VE explained that his methodology for obtaining job numbers consists of looking at a publication of the Department of Labor, Bureau of Statistics, and a computer application called SkillTRAN. (*Id.*) According to the VE, he provides the ALJ with the more conservative number from the two sources. (*Id.*)

On January 4, 2017, less than two weeks after the hearing, Plaintiff provided the ALJ with a 38-page document entitled Post-Hearing Memorandum and Objections to the Vocational Witness' Testimony. (Ex. 22E, ECF No. 10-7.) Through the document, Plaintiff attempted to challenge the vocational expert's testimony on multiple grounds. In particular, Plaintiff objected to the VE's use of OES group job incidence data or a SkillTRAN software application called Job Browser Pro. (R. 282 – 85.) Plaintiff included certain exhibits through which he purported to substantiate his claim that the numbers from the sources are unreliable.

In his February 9, 2017, decision, the ALJ recognized that Plaintiff had submitted additional evidence for the ALJ's consideration. The ALJ, however, applied the five-day rule, which rule requires that evidence be provided to an ALJ no later than five days before the scheduled hearing, subject to limited exceptions. 20 C.F.R. § 404.331(a) (2016). The ALJ found that none of the exceptions applied, and declined to consider the additional evidence. (R. 19 – 20.) The ALJ ultimately relied on the testimony of the VE to support his step 5 finding on job numbers.

Plaintiff reasserted his objection with the Appeals Council (Ex. 23E), but the Appeals Council found no reason to review the decision. The Appeals Council, however, did not entirely disregard the issue regarding the VE testimony. The Council explained

that it reviewed what Plaintiff described as the ALJ's "refusal to allow the claimant to respond to [a] complex vocational issue post-hearing," and concluded the ALJ did not abuse his discretion. (R. 4.)

**Standard of Review**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion**

When a claimant maintains that the administrative decision should be vacated based on the failure of the ALJ or Appeals Council to consider new evidence, the Court must consider whether the failure to consider the evidence was the product of a supportable exercise of administrative discretion. *Raymond v. Astrue*, No. 1:12–cv–92–DBH, 2012 WL 6913437, at *2 (Dec. 31, 2012), *rec. dec. adopted*, 2013 WL 214569 (D. Me. Jan. 18, 2013). Pursuant to 20 C.F.R. § 404.331(c) (2016), Defendant has instructed that an ALJ "will accept" evidence submitted after a hearing if (1) there is a "reasonable possibility that

the evidence … would affect the outcome" and (2) a factor beyond the claimant's control prevented submission of the evidence before the hearing.

Plaintiff argues the ALJ erred when he declined to consider the supplemental evidence concerning the VE testimony, and the number of jobs available in the national economy. Plaintiff contends application of the five-day rule in a situation such as this is illogical, given that a claimant cannot predict VE testimony in advance of a hearing and should have a meaningful opportunity to offer objections or rebuttal evidence.

At step 5 of the evaluation process, the Commissioner has the burden to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"), and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982). The administrative process permits a claimant to question the vocational expert, and to clarify or develop the vocational expert's testimony. Additionally, Social Security Ruling 96-9p provides that, "[w]henever a VE is used, the individual has the right to review and respond to the VE evidence prior to the issuance of a decision." 1996 WL 374185, at *9 n.8 (S.S.A. July 2, 1996).

The First Circuit Court of Appeals has reasoned that a challenge to a vocational expert's reliance on the OEQ could raise a meritorious issue on appeal where the vocational

5

expert testified at the hearing that "there was no way" to extract job numbers for particular jobs using the OEQ. *Wiley v. Colvin*, No. 13-2473, 2015 WL 9653048, *1 – 2 (1st Cir. Feb. 11, 2015). Similarly, this Court has determined that it is appropriate to scrutinize vocational expert testimony to ensure that the vocational expert "gave job numbers for DOT-specific jobs, not aggregate groups of jobs of varying skill and exertional levels." *Small v. Colvin*, No. 1:12-cv-236-GZS, 2013 WL 1912892, at *8 (Mar. 30, 2013), *rec. dec. adopted*, 2013 WL 1912862 (D. Me. May 8, 2013).

In the recent case of *Palombo v. Berryhill*, the District of New Hampshire concluded that submission of a vocational expert affidavit is an appropriate means to respond to vocational expert testimony elicited by the ALJ at the hearing. No. 1:17-cv-284, 2018 WL 3118286, at *4 – 5 (D.N.H.) (citing *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) ("[T]he submission and consideration of post-hearing evidence are common in social security disability cases—especially evidence consisting of 'posthearing affidavits of experienced workers, supervisors, etc., to rebut vocational "expert" testimony which cannot be anticipated prior to hearing,' [Richard C.] Ruskell, [Social Security Claims Handbook] § 9:88 [2009], since the claimant has no clue to what the vocational expert will testify until the end of the hearing.").

Here, Plaintiff's post-hearing submission consisted of a series of related evidentiary objections designed to challenge the testimony of the vocational expert. In support of the objections, Plaintiff offered a variety of arguments related to the merits of the step 5 determination, some of which he attempted to support with competing evidence. Plaintiff asserted the following objections:

1. The vocational expert was unqualified.
2. The vocational expert was incorrect because the Job Browser Pro application actually reports the existence of 5,670 jobs in the national economy bearing the specific Dictionary of Occupational Titles code in question, i.e., #709.687-01.
3. There is an apparent conflict between the vocational expert's testimony and the DOT regarding the amount of reaching required by the job.
4. The RFC included a sit/stand option, which was improper as a matter of law because a sit/stand option is an accommodation.
5. OES group job incidence data is immaterial because most jobs in the group would exceed Plaintiff's skill level and the stated RFC.
6. SkillTRAN and the Job Browser Pro application are unreliable, unproven sources.
7. The objections require a supplemental hearing for their resolution.

In addition to his contention that the ALJ's application of the five-day rule to a situation such as this is illogical, Plaintiff also argues the ALJ is required by administrative procedural standards to rule on all objections, citing Defendant's Hearings, Appeals, and Litigation Law Manual (HALLEX). (Statement of Errors at 6 – 7.)

The HALLEX provides that where the testimony of a vocational expert is needed to "inquire fully into the matters at issue," it is preferable to obtain the testimony at the hearing (rather than through interrogatories) so that the ALJ, claimant, and claimant's representative can ask any question material to the issues that may "arise for the first time during the hearing." HALLEX § I-2-5-30(A), (B). The claimant may also state objections,

and "[t]he ALJ will respond to any objections, either in writing or on the record at the hearing." *Id.* § (B).

In accordance with the HALLEX, in advance of the hearing, a claimant is provided with the Notice of Hearing, which includes, inter alia, the name of the expert witness(es) who will testify at the hearing. *Id.* §§ I-2-3-15, I-2-6-74(A). In addition, prior to the hearing, a claimant will have received notice of the bases for Defendant's denial of the disability claim, through both an initial decision and a reconsideration decision.

At the hearing, the ALJ asks the VE to confirm his or her impartiality, expertise, and professional qualifications, verify that the VE has examined all vocational evidence of record, and inquire whether the claimant and representative have any objections. If an objection is raised, the ALJ may address it at the hearing, in writing, or in the body of the decision. *Id.* § I-2-6-74(B). Subject to certain limitations not applicable here, "[t]he claimant and the representative have the right to question the VE fully on any pertinent matter within the VE's area of expertise." *Id.* § (C). Additionally:

> Before the ALJ may rely on a VE's testimony to support a disability decision, the ALJ must inquire on the record whether there are any conflicts between occupational evidence the VE provided and information contained in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the U. S. Department of Labor. The ALJ must identify and obtain a reasonable explanation for any such conflict. The ALJ also must explain in the decision how he or she resolved any identified conflict.

*Id.* § (E).

Defendant persuasively argues that the ALJ appropriately applied the five day rule to exclude certain arguments and evidence where Plaintiff could have anticipated the issues

and failed to raise an objection at the hearing. (Response at 3.) Specifically, Plaintiff's objections to the VE's qualifications, the alleged "apparent conflict" regarding the RFC for overhead reaching, the legal objection to use of a sit/stand option in an RFC,[3] or documents suggesting there is no reliable means of determining the actual number of jobs by DOT code,[4] could have been raised and developed at the hearing.

Plaintiff, however, contends that he could not reasonably be expected to anticipate that the VE would select one particular type of job as available in the national economy and, therefore, the VE should have considered the Job Browser Pro application, which reports the existence of only 5,670 jobs. Where a claimant presents actual evidence that suggests a substantial variance in the number of available jobs in the national economy, application of the five-day rule to preclude consideration of the evidence could be

---

[3] It is not clear that in this proceeding, Plaintiff is pursuing his objections to the ALJ's RFC findings, i.e., the apparent conflict involving reaching or the appropriateness of considering the impact of a sit/stand option. Plaintiff's representative in fact touched on the reaching issue and the VE responded that overhead reaching would not be required beyond the RFC limitation to frequent. (R. 44 – 45, 56 – 57.) Additionally, VEs have testified in many cases that there are jobs that permit any worker to sit or stand at his or her election. Something that is permitted of all workers is not a special accommodation. *E.g.*, *Saeed v. Comm'r of SSA*, No. 1:16-cv-11928, 2018 WL 1243953, at *10 n.15 (D. Mass. Mar. 9, 2018) (citing cases). Counsel at the hearing appears to have understood that this was not an issue worthy of an objection. (R. 56.) In any event, although it does not appear that the issues have merit, the time to explore any such "objections" to VE testimony is at the hearing, where the issues are meant to be developed factually, and that the submission of post-hearing written objections does not place any special burden on the ALJ to do more than issue a decision supported by substantial evidence. A contrary ruling could well undermine an already overburdened agency. *Cf. Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (affirming ruling that claimant waived objection by failing to raise it before the ALJ, observing that "a no-waiver approach ... at the ALJ level ... could cause havoc, severely undermining the administrative process").

[4] The objection related to the reliability of job incidence data is a long-standing objection that many counsel have raised. In a recent opinion concerning the reliability of the SkillTRAN/Job Browser Pro application, the First Circuit observed that evidentiary presentations at disability hearings are not subject to the Federal Rules of Evidence. *Purdy v. Berryhill*, 887 F.3d 7, 16 (1st Cir. 2018) (citing 42 U.S.C. § 405(b)(1), 20 C.F.R. § 404.950(c), and *Richardson v. Perales*, 402 U.S. 389, 400 (1971)). Given the flexibility of the substantial evidence standard, the Court held that VE testimony that draws on reports obtained from Job Browser Pro can satisfy Defendant's step 5 burden of demonstrating the existence of jobs existing in substantial numbers in the national economy. *Id.* at 16 – 17.

inappropriate because "some other factor beyond the claimant's control prevented a timely submission." 20 C.F.R. § 404.331(c)(3) (2016).

Here, because the ALJ relied exclusively on one job to satisfy Defendant's burden at step 5, and Plaintiff's objection or challenge to the VE's testimony regarding the number of available jobs could not have been made five days before the hearing, the ALJ's decision not to consider the Job Browser Pro evidence is only sustainable if Plaintiff was not prejudiced by the decision. *E.g.*, *Cooley v. Berryhill*, No. 2:17-cv-45-DBH, 2017 WL 4809998, at *4 (Oct. 25, 2017), *rec. dec. adopted*, 2017 WL 5492016 (D. Me. Nov. 15, 2017) (error as to certain jobs deemed harmless where remaining jobs satisfied Defendant's step 5 burden). The significant difference between the number of available jobs to which the VE testified, and the comparatively small number of jobs identified in the Job Browser Pro submission, generate legitimate questions as to whether there are sufficient number of jobs available in the national economy. *Vining v. Astrue*, 720 F. Supp. 2d 126, 136 – 38 (D. Me. 2010) (citing cases). Given the circumstances, it is fair to conclude that there is a "reasonable possibility" that a submission suggesting there are 5,670 jobs in the national economy, rather than 130,000, "would affect the outcome" as contemplated by 20 C.F.R. § 404.331(c), particularly as the evidence concerns a step 5 finding and it is Defendant's burden to develop a substantial evidentiary basis for a step 5 finding.

The ultimate questions as to whether Plaintiff's competing Job Browser Pro submission is sufficient to generate a reevaluation, and whether the job numbers reflected in Plaintiff's submission change the outcome, should be assessed, in the first instance, by the Commissioner after considering the record. The Court should not be asked to make a

legal determination on such questions in the absence of a prior application of agency judgment. *See*, *e.g.*, *Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (Dec. 30, 2012), *rec. dec. adopted*, 2013 WL 214571 (D. Me. Jan. 18, 2013) ("Pursuant to *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), a reviewing court cannot affirm an agency's decision on the basis of a post hoc rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker.") (citation and internal quotation marks omitted). Here, remand for Defendant to consider Plaintiff's challenge, based on the Job Browser Pro submission, to the VE's testimony regarding the number of jobs available in the national economy is warranted.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of November, 2018.